UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
MOUSSA GUEYE,                           :
                                        :
                        Plaintiff,      :        21cv5044 (DLC)
                                        :
            -v-                         :        OPINION AND ORDER
                                        :
A. DUIE PYLE, INC. and DAVID VELA,      :
                                        :
                        Defendants.     :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff Moussa Gueye:
Michael William Mahan
William Schwitzer & Associates, P.C.
820 Second Avenue, 10th Floor
New York, NY 10017

For defendants A. Duie Pyle, Inc. and David Vela:
Matthew Kory Finkelstein
London Fischer, LLP
59 Maiden Lane, 39th Floor
New York, NY 10038

DENISE COTE, District Judge:

     Moussa Gueye brings this action asserting a single claim of
negligence against David Vela and A. Duie Pyle, Inc. ("ADP")
arising out of an accident between vehicles driven by Gueye and
Vela.  The defendants have filed a motion for summary judgment.
For the following reasons, the defendants' motion is granted.

## Background

The following facts are taken from the parties'
submissions.  They are undisputed or are taken in the light most
favorable to the plaintiff unless otherwise noted.

I.  The Intersection

This action arises out of a collision in the intersection
of Jackson Avenue and Queens Boulevard in Queens, New York (the
"Intersection") between a truck driven by Vela and an electric
scooter, or "E-scooter," driven by Gueye.  Jackson Avenue is a
two-way street, running north and south[1] with two lanes on each
side.  In the left lane of Jackson Avenue, drivers may either
proceed straight or turn left onto Queens Boulevard.  Queens
Boulevard is a two-way street, running east and west.  At the
Intersection, a pedestrian crosswalk that is about 30 to 40 feet
long crosses Jackson Avenue alongside Queens Boulevard.  There
is also a two-way bicycle lane on the north side of Queens
Boulevard and to the west of the Intersection.  Within the
Intersection, the bicycle lane runs between the crosswalk and
the line for cars to stop when they arrive at the Intersection.

---

[1] The orientation of the streets in this case is taken from the
parties' statements of purportedly undisputed facts and the
supporting testimony, rather than from the plaintiff's expert
report.

2

Traffic on Jackson Avenue approaching Queens Boulevard is controlled by an ordinary red, yellow, and green traffic light, which also includes a separate left-turn light.  After the light controlling southbound traffic turns green, it remains green for a while and then, after the northbound traffic is stopped by a red light, the left-turn arrow also turns green.  There are also signal lights controlling the crosswalk and the bicycle lane that cross Jackson Avenue.  During the entire time that the light for southbound traffic is green (that is, both before and after the left-turn arrow also turns green), the lights controlling the crosswalk, bicycle, and traffic lanes that cross Jackson Avenue are red.

II.  The Collision

On the morning of December 14, 2020, Vela, a licensed truck operator, drove a white flatbed straight truck to deliver countertops as part of his employment with ADP.[2]  It was lightly raining that morning and the road was wet, but Vela could see clearly.  Vela's headlights were turned on, and his windshield wipers were operating at a moderate speed.  Prior to the incident, Vela turned right onto Jackson Avenue, entered the

---

[2] The truck had six tires.  The front of the truck was approximately five to eight feet wide, the grill was about five feet tall, and the tires were about three feet tall.  The truck was carrying a large, white sheet of manmade stone.

right lane, and headed south towards Queens Boulevard.  There
was moderate traffic on Jackson Avenue, and Vela was driving at
around ten to fifteen miles per hour.

Vela traveled approximately two blocks before turning on
his left directional signal and entering the left lane because
he planned to turn left onto Queens Boulevard.  Vela entered the
left lane completely and kept his directional signal turned on.
About 50 to 70 feet before the Intersection, Vela noticed that
the light for southbound traffic was green.  Vela did not
observe a green left turn arrow at the Intersection and instead
saw only the primary green light for southbound traffic.  Vela
also noticed a traffic enforcement agent at the Intersection,
who Vela claims was waving him through the Intersection.[3]  As he
approached the Intersection, Vela could see to his left and
right and could see about 60 feet past the Intersection.  Vela
did not see any pedestrians or vehicles in the bicycle lane or
the crosswalk.

As Vela approached the Intersection on Jackson Avenue,
Gueye approached it on Queens Boulevard in the bicycle lane.
The following diagram illustrates, at a high level, the
Intersection and the direction of the parties' travel just

---

[3] As explained further below, the parties dispute whether the
traffic agent was waving Vela through the Intersection or simply
"standing there."

before the accident.  Gueye is represented with a "P" and Vela
with a "D."



Gueye was wearing an olive-green jacket and blue jeans and
was riding an E-scooter.  He was not wearing a helmet or other
protective gear.  The headlight on Gueye's E-scooter was not
illuminated.

Before arriving at the Intersection, Gueye had passed three
other roads.  Each of these crossings was, like the
Intersection, controlled by a traffic light.  Gueye stopped at
each of these three roads because the traffic signal was red as
he approached.  He waited until the signal at each of these
crossings changed to green before moving forward.

When Gueye arrived at the Intersection where the accident occurred, he stopped his E-scooter because he "didn't want to keep flying."  Gueye noticed that there was a traffic signal for the bicycle lane at the Intersection, but he does not recall the color of the light or whether he looked at the light before crossing Jackson Avenue.  The traffic signal for the bicycle lane sits atop the "walk" or "do not walk" sign for pedestrians. Although Gueye does not recall the color of the traffic light that he faced, he does not dispute that Vela faced a green light.  Gueye also does not dispute that, if Vela's light was green, the light facing Gueye would have been red.  Gueye also noticed the traffic agent near the Intersection, who he asserts was just "standing there."  Gueye testified that he stopped at the Intersection for about three seconds, looked left and right three times, and, not seeing any approaching vehicles, pushed off from the curb and entered the Intersection.

Around the same time, Vela proceeded through the green light for traffic on Jackson Avenue, and, about two seconds after Gueye kicked off from the curb, the front of Vela's truck hit Gueye in the Intersection, roughly eight feet from the curb. Gueye was accelerating at the moment of impact, while Vela was maintaining his speed of about ten to fifteen miles per hour. Vela first saw Gueye less than three feet from the front of the

truck and less than one second before the collision occurred.
Gueye did not see or hear the truck prior to the impact.  Both
Gueye and Vela were looking forward in the direction of their
movements just before the incident occurred.  Before the
accident, Vela did not sound his horn or take any evasive
maneuvers.  At the moment of impact, Vela braked immediately,
and without skidding, the truck came to a stop less than one
second later.

The traffic agent at the Intersection did not see the
accident.  When he heard the accident, the agent turned around
to see what happened, walked over to check on Gueye, and called
an ambulance.  Later, a police officer arrived on the scene and
created an accident report.  The officer spoke with Vela and
Gueye but did not issue violations to either because he did not
personally witness the incident.

On February 8, 2021, Gueye, a citizen of New York, filed
this action in state court, asserting a claim of negligence
against ADP, Vela's employer.  ADP removed the case to federal
court on June 8 based on the diversity of the parties'
citizenship.[4]  On July 30, the case was consolidated with another

---

[4] ADP is a Pennsylvania corporation with its principal place of
business in Pennsylvania.  The total amount in controversy is
over $75,000.

case brought by Gueye against Vela, as well as Ryder Truck
Rental LT and Ryder Truck Rental, Inc. (together "Ryder").  Vela
is a resident of New Jersey.  That same day, the parties
stipulated to severing Ryder from the case.  On August 17, 2022,
the case was reassigned to this Court.

The remaining defendants in this consolidated case, ADP and
Vela, filed a motion for summary judgment on November 10, 2022.
The motion was fully submitted on February 3, 2023.

## Discussion

Under New York law,[5] to prevail on a claim of negligence,
the plaintiff must show "(1) the defendant owed the plaintiff a
cognizable duty of care; (2) the defendant breached that duty;
and (3) the plaintiff suffered damage as a proximate result."
Ferreira v. City of Binghamton, 975 F.3d 255, 266 (2d Cir. 2020)
(citation omitted).  "New York law utilizes a comparative
negligence scheme, meaning the doctrines of contributory
negligence and assumption of risk are not complete defenses as a
matter of law."  In re Buchanan Marine, L.P., 874 F.3d 356, 369
(2d Cir. 2017).  Nonetheless, under New York law, "a defendant
may obtain summary judgment by demonstrating the plaintiff's
conduct was the sole proximate cause of the accident and an

---

[5] The incident occurred in New York State, and the parties'
briefs apply New York law.

absence of evidence on the defendant's negligence." Reyes v.
United States, 19-CV-5325 (KHP), 2021 WL 1639370, at *4
(S.D.N.Y. Apr. 26, 2021); see also Ballentine v. Perrone, 114
N.Y.S.3d 696, 697-98 (2d Dep't 2020); Wolf v. Cruickshank, 41
N.Y.S.3d 754, 755 (2d Dep't 2016).

A violation of New York's Vehicle and Traffic Law ("VTL")
"constitutes negligence as a matter of law." Orellana v.
Mendez, 174 N.Y.S.3d 445, 447 (2d Dep't 2022) (citation
omitted). As relevant here, the VTL provides that "[e]very
person shall obey the instructions of any official traffic-
control device applicable to him . . . unless otherwise directed
by a traffic or police officer." N.Y. Veh. & Traf. Law
§ 1110(a). It further provides that "[e]very person riding an
electric scooter upon a roadway . . . shall be subject to all of
the duties applicable to the driver of a vehicle." Id.
§ 1281(1).

According to the VTL, traffic facing a red signal must stop
at a stop line, crosswalk, or

> the point nearest the intersecting roadway where the
> driver has a view of the approaching traffic on the
> intersecting roadway before entering the intersection
> and shall remain standing until an indication to
> proceed is shown.

Id. § 1111(d)(1) (emphasis added). By contrast, traffic

> facing a steady circular green light may proceed
> straight through or turn right or left unless a sign
> at such place prohibits either such turn.

Id. § 1111(a)(1) (emphasis added).

A driver with the right-of-way who acts negligently may still be liable for damages "notwithstanding the invitation to proceed by the green light facing him or her." Miles v. Walsh, 146 N.Y.S.3d 501, 501 (2d Dep't 2021) (citation omitted). Thus, even a driver proceeding through a green light "has a duty to use reasonable care to avoid a collision, including keeping a proper lookout" to "see what can be seen through the proper use of his or her senses." Canales v. Arichabala, 1 N.Y.S.3d 140, 142 (2d Dep't 2014) (citation omitted). Still, a "driver who has the right-of-way is entitled to anticipate that other motorists will obey the traffic laws and yield the right-of-way." Cox v. Weil, 887 N.Y.S.2d 170, 171 (2d Dep't 2009); see also Canales, 1 N.Y.S.3d at 142. Accordingly, a driver who lawfully proceeds through a green light and "who has only seconds to react to a vehicle which has failed to yield is not comparatively negligent for failing to avoid the collision." Vigdorchik v. Vigdorchik, 177 N.Y.S.3d 131, 133 (2d Dep't 2022) (citation omitted).

The defendants have established that plaintiff was negligent as a matter of law because he violated VTL

§ 1111(d)(1).  It is not disputed that Vela had a green light when he proceeded through the Intersection.  The plaintiff therefore faced a red light.  Although the plaintiff states that he stopped for three seconds and looked in both directions before proceeding into the Intersection, he was still in violation of VTL § 1111(d)(1).  That section required the plaintiff to remain stopped at the Intersection "until an indication to proceed" appeared, but the plaintiff continued into the Intersection before his light turned green.

Plaintiff argues that the defendants have not shown that Vela had the right-of-way prior to the accident because Vela did not observe a green left-turn arrow.  This argument is without merit.  Vela was entitled to enter the Intersection to turn left on the circular green light, regardless of whether the left-turn arrow was also illuminated.  There is no evidence in the record suggesting that left turns onto Queens Boulevard were permitted only when the left-turn arrow was green.  There is no dedicated left-turn lane on Jackson Avenue at the Intersection. Accordingly, Vela had the right-of-way at the Intersection, and Gueye was negligent for proceeding through a red light.

Because of New York's comparative negligence scheme, the plaintiff's negligence is insufficient to establish that defendants are entitled to judgment as a matter of law unless

11

the defendants can also show that there is no evidence of
negligence on their part and that plaintiff's negligence was the
sole proximate cause of his injuries.  The defendants have made
such a showing here.  The defendants note that Vela: traveled at
an appropriate speed, paid attention to the conditions of the
road, used his directional signal to indicate a lane change and
anticipated left turn, and proceeded through a green light into
the Intersection.  There is no evidence that Vela acted
negligently.  Instead, the sole proximate cause of plaintiff's
injuries was plaintiff's negligent act in driving into the
Intersection while facing a red light.

    Plaintiff's arguments that there are fact issues regarding
comparative negligence that preclude a grant of summary judgment
fail.  Plaintiff primarily argues that there is a triable issue
of fact over whether Vela was negligent in failing to see
plaintiff when he entered the Intersection.  Although drivers
with the right-of-way are required to keep a proper lookout and
remain attentive to other drivers and pedestrians, there is no
evidence that Vela was negligent in failing to see Gueye before
the accident.  According to Gueye's own testimony, he was
stopped at the Intersection for no more than three seconds, then
pushed off into the street and was hit no more than two seconds
later.  Thus, there were at most five seconds in which Vela

12

could have noticed Gueye prior to the accident.  Moreover, Vela
was entitled to assume that Gueye would yield the right-of-way
since Vela had a green light.  Accordingly, Vela's failure to
notice Gueye and take evasive actions in a matter of seconds
does not make him comparatively negligent.  See, e.g.,
Vigdorchik, 177 N.Y.S.3d at 133.

The cases Gueye cites to argue that Vela was comparatively
negligent are inapposite.  In two of the cases cited by
plaintiff, the collisions occurred at stop signs and the parties
disputed whether it was appropriate for one party to proceed
into the intersection after an initial stop.  See Sirot v.
Troiano, 886 N.Y.S.2d 504, 505 (2d Dep't 2009); Nevarez v.
S.R.M. Mgmt. Corp., 867 N.Y.S.2d 431, 432-33 (1st Dep't 2008).
Another case that the plaintiff cites did not involve a traffic
control device at all, let alone a plaintiff disregarding such a
device.  See Spicola v. Piracci, 768 N.Y.S.2d 867, 867 (4th
Dep't 2003).  And, in the final case relied on significantly by
the plaintiff, the court found a triable issue of fact regarding
the movant's comparative negligence, but the opinion includes no
detail about the facts supporting that conclusion to provide
meaningful guidance for Gueye's case.  See Miles v. Walsh, 146
N.Y.S.3d 501, 501 (2d Dep't 2021).

Plaintiff separately argues that triable issues of fact exist regarding the actions of the traffic agent positioned at the Intersection.  This argument also fails.  According to Vela, the traffic agent was waving him through the green light. According to the plaintiff, the traffic agent was not even looking in Vela's direction and did not see Vela's truck prior to the accident.  At the outset, it is not even clear that these versions of the events are in conflict.  It is entirely conceivable that the traffic agent was waving Vela through the green light while looking towards the traffic on Queens Boulevard that was stopped.  In any event, however, the actions of the traffic agent do not raise a genuine issue of material fact.  According to the parties' versions of the story, the traffic agent was either waving Vela through the Intersection or doing nothing.  Even assuming that the traffic agent was standing at the Intersection doing nothing, Vela still would have had the right-of-way based on the green light.  There is no contention that the traffic agent was instead telling Vela to stop.  Thus, the traffic agent's actions (or lack thereof) do not create a genuine issue of material fact regarding defendants' comparative negligence.

Plaintiff's remaining arguments concern specific evidence submitted by the parties.  These arguments do not affect the

14

result.  Plaintiff argues, for example, that statements in the police report made after the accident are inadmissible hearsay. It is unnecessary to decide this issue, however, because the other evidence in the record is sufficient to show defendants' entitlement to judgment as a matter of law.

Plaintiff also submits an expert report from Dr. James Pugh (the "Pugh Report") to argue that conflicting expert opinions create a triable issue of fact.  But an "expert's report is not a talisman against summary judgment," Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth., 11 F.4th 55, 67 (2d Cir. 2021) (citation omitted), and the Pugh Report does not save the plaintiff because it is inadmissible.

At the outset, the Pugh Report is unsworn.  Although declarations need not be sworn to be reviewed on a motion for summary judgment, see Fed. R. Civ. P. 56(c), cmt. to 2010 amendment, an unsworn declaration must substantially comply with the requirements of 28 U.S.C. § 1746.  That provision requires unsworn statements to be signed and contain language confirming that the statements were made under penalty of perjury.  The requirements of § 1746 are mandatory.  In re World Trade Ctr. Disaster Site Litig., 722 F.3d 483, 487-88 (2d Cir. 2013). Although the Pugh Report is signed, it does not contain the

language required by § 1746 and for that reason alone is inadmissible.

Further, the Pugh Report is inadmissible under Fed. R. Evid. 702.  Courts analyze admissibility under Rule 702 using the principles articulated in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  Under these rules, expert testimony must be relevant and must rest on a reliable foundation.  United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).  Such testimony should be excluded if it is "speculative or conjectural," United States v. Jones, 965 F.3d 149, 162 (2d Cir. 2020) (citation omitted), and courts are not required to admit an expert opinion if it "is connected to existing data only by the ipse dixit of the expert."  In re Pfizer Inc. Secs. Litig., 819 F.3d 642, 665 (2d Cir. 2016) (citation omitted).

The Pugh Report's analysis is cursory.  It speculates that the impact occurred because Vela was distracted due to visual complexities at the Intersection and because Vela was driving between seventeen and thirty miles per hour.  When asked at his deposition what evidence he had to support his conclusion that Vela was distracted, Dr. Pugh responded that his only evidence was that Vela hit the plaintiff.  On the second point, Dr. Pugh conceded in his deposition that, using his own methodology,

Vela's speed would have been "17 [miles per hour] or less." In sum, the plaintiff has not shown that the conclusions contained in the Pugh Report were based on reliable methods reliably applied to the facts. As a result, the report is inadmissible and does not preclude a grant of summary judgment for the defendants.[6]

## Conclusion

The defendants' November 10, 2022 motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for the defendants and close the case.

Dated:    New York, New York
          March 9, 2023

                                    DENISE COTE
                          United States District Judge

---

[6] It is unnecessary to determine whether defendants' proffered expert reports are admissible because the other evidence in the record suffices to show defendants' entitlement to summary judgment.

17